UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Winthrop Resources Corporation,

Plaintiff,

vs.

Sabert Corporation and Sabert Holding Corporation,

Defendants.

---

Civil No. ________

**COMPLAINT**

## INTRODUCTION

Plaintiff Winthrop Resources Corporation ("Winthrop") provides an option for businesses to use computer equipment, software and other items necessary for operation of those businesses. Winthrop allows each customer to select its choice of equipment; Winthrop then purchases the equipment for the customer's use and leases the equipment to the customer in exchange for monthly lease payments. In this case, Defendants Sabert Corporation and Sabert Holding Corporation (together "Sabert") agreed to lease from Winthrop, as co-lessees, among other things, computer equipment and software to be used in the operation of Sabert's business. While retaining the benefits of, among other things, Winthrop's equipment and software, Sabert refuses to pay the agreed-upon amounts under the Winthrop lease. Accordingly, Winthrop brings this case for breach of contract.

## PARTIES, JURISDICTION AND VENUE

1. Winthrop is a corporation duly organized and existing under the laws of the State of Minnesota with its principal place of business located at 11100 Wayzata Boulevard, Suite 800, Minnetonka, Minnesota 55305.

2. On information and belief, Sabert Corporation is a corporation duly organized and existing under the laws of the State of New Jersey with its principal place of business at 879 Main Street, Sayreville, New Jersey 08872.

3. On information and belief, Sabert Holding Corporation is a corporation duly organized and existing under the laws of the State of New Jersey with its principal place of business at 879 Main Street, Sayreville, New Jersey 08872.

4. Venue is appropriate in this judicial district as Winthrop is located in the District of Minnesota and Sabert has waived any objection to venue in this district.

5. Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1332, because the parties are citizens of different States and the matter in controversy exceeds $75,000, exclusive of interest and costs. Moreover, Sabert has contractually consented to this Court's jurisdiction.

## FACTUAL ALLEGATIONS

6. Winthrop is a financial services company that specializes in leasing computer systems and related items to corporate consumers.

7. The relationship between Winthrop and its customers is governed by a lease agreement. The equipment leased by the customer is then specifically listed on a lease schedule.

8. On or about April 10, 2003, Winthrop and Sabert entered into a contractual relationship pursuant to which Winthrop purchased substantial computer equipment, software and related items selected by Sabert, and in turn leased the computer equipment, software and related items to Sabert.

9. Sabert and Winthrop negotiated Lease Agreement No. SA041003 dated April 10, 2003 (the "Lease Agreement"), a true copy of which is attached as Exhibit A to this Complaint

and incorporated herein by reference. The Lease Agreement and related lease schedules are collectively hereinafter referred to as the "Lease."

10. On or about November 10, 2003, Sabert signed Lease Schedule Number 001R issued pursuant to the Lease Agreement ("Lease Schedule 001R"), which identifies the specific equipment, software and other items leased by Sabert (hereinafter the "Equipment") and the monthly lease charges due thereon. The monthly lease charges due under Lease Schedule 001R are $25,576.00. A true copy of Lease Schedule 001R is attached as Exhibit B and is incorporated herein by reference.

11. Sabert executed certificates of acceptance for items of Equipment pertaining to Lease Schedule 001R. These certificates of acceptance identified the installation dates for the various Equipment.

12. The Lease Agreement and Lease Schedule 001R provide for an initial lease term that commences on the first day of the month following installation of all the Equipment on Lease Schedule and continues for 42 months thereafter.

13. The Lease Agreement further provides that after the initial term has ended, the Lease shall continue from year to year thereafter until terminated.

14. Pursuant to the Lease Agreement, Sabert was required to provide written notice of its termination, via certified or registered mail, 120 days or more before the termination date of each particular lease schedule.

15. Pursuant to the Lease Agreement and Lease Schedule 001R, the initial term for Sabert's lease of equipment pursuant to Lease Schedule 001R was December 1, 2003 through May 31, 2007.

16. Sabert has not provided written notice of its termination as required by the Lease Agreement, resulting in a one-year extension to Lease Schedule 001R. Pursuant to the express terms of the Lease, the current term of Lease Schedule 001R extends to May 31, 2008.

17. Pursuant to the express terms of the Lease, Sabert agreed to pay monthly lease charges in advance for the Equipment in the amounts and for the term provided in the Lease. If any payment is not received within ten (10) days of the due date, Sabert also agreed to pay a late fee equal to the lesser of 1-1/2% of the late payment or the maximum late fee allowed by law, if less.

18. Pursuant to the express terms of the Lease, the nonpayment by Sabert of any lease charges when due, or the non-payment of any other sum required under the Lease which non-payment continues for a period of ten (10) days after written notice, constitutes an event of default entitling Winthrop to exercise the remedies set forth in the Lease.

19. Pursuant to the express terms of the Lease, in the event of default, Winthrop is entitled to retain any and all security deposits.

20. Pursuant to the express terms of the Lease, Sabert agreed that it would pay to Winthrop, on demand, all costs, expenses and fees paid or payable in connection with Winthrop's claim, including, but not limited to, attorneys' fees and out-of-pocket costs and travel and related expenses incurred by Winthrop or its attorneys.

21. Pursuant to the express terms of the Lease, the Lease is a net lease and Sabert's obligations to pay all lease charges and other amounts payable thereunder is absolute and unconditional.

22. Sabert has failed and refused to pay the lease charges due on January 1, 2007, and each month thereafter, despite repeated demand by Winthrop.

23. As of March 30, 2007, the amount due under the Lease exceeds $75,000.00, the exact amount to be determined in these proceedings.

**<u>COUNT I</u>**
**(BREACH OF LEASE)**

24. Winthrop restates and realleges the allegations in Paragraphs 1 through 23 above as though fully set forth herein.

25. Sabert Corporation and Sabert Holding Corporation are bound by the terms of the Lease and are jointly and severally liable for their obligations under the Lease.

26. Sabert has caused an event of default under the Lease and has otherwise breached the Lease by, among other things, failing to make monthly lease payments when due and for the period set forth in the Lease, including without limitation failing to pay the lease charges due on January 1, 2007, February 1, 2007, and March 1, 2007.

27. Pursuant to the express terms of the Lease, Winthrop is entitled to pursue and recover from Sabert, alternatively, successively and/or concurrently, among other things, all rents and other amounts as and when they become due; is entitled to accelerate and cause to become immediately due and payable all rents and other amounts due as are likely to become due under the Lease; is entitled to recover the casualty loss value of the Equipment; and is entitled to return of the Equipment; and is entitled to pursue all other remedies available to Winthrop under the Lease, at law, equity or under any statute. In addition, the Lease Agreement provides for an award to Winthrop of costs, expenses and attorneys' fees.

28. The above-described conduct constitutes a breach of the Lease by Sabert, and as a direct and proximate result of Sabert's breach of the Lease, Winthrop has suffered damages in an amount in excess of $75,000.00, to be proven in these proceedings, and Winthrop is entitled to pursue all remedies available to Winthrop under the Lease, at law, equity or under any statute.

WHEREFORE, Winthrop requests that this Court enter judgment in its favor and against Sabert as follows:

1. Awarding Winthrop its damages against Sabert in an amount to be proven at trial, and awarding all other remedies available to Winthrop under the Lease, at law, equity or under any statute, including, but not limited to, requiring Sabert to deliver the Equipment to a location designated by Winthrop; and

2. Awarding Winthrop any additional damages that it may suffer from the date of this Complaint through the date of trial, awarding Winthrop prejudgment interest, awarding Winthrop judgment for the costs and reasonable attorneys' fees incurred in this action; and awarding Winthrop such other and further relief as the Court deems appropriate.

Dated: March 30, 2007.

FAEGRE & BENSON LLP

Edward T. Wahl, # 15409X
Michael M. Krauss, # 0340002
Nathaniel J. Zylstra, # 0314328
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000

**Attorneys for Plaintiff**
**Winthrop Resources Corporation**

fb.us.1918561.03