**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Winthrop Resources Corporation, **Civil Case No. 07-CV-1735 (PJS/RLE)**

Plaintiff,

v.

Sabert Corporation and Sabert Holding Corporation,

Defendants.

---

# ANSWER AND COUNTERCLAIM OF SABERT CORPORATION AND SABERT HOLDING CORPORATION

**Jury Trial Demanded**

---

For their Answer and Counterclaim to the above-captioned Complaint of Plaintiff Winthrop Resources Corporation ("Plaintiff" or "Winthrop"), Defendants Sabert Corporation and Sabert Holding Corporation (collectively "Sabert"), state as follows:

## INTRODUCTION

Between November 2002 and May 2003 Sabert concluded a substantial upgrade of its computer system, including the installation of an information management software system. Prior to April 10, 2003, James Natale, a Winthrop account representative, contacted Gary Ziznewski, Sabert's Chief Financial Officer, about financing options Winthrop had available for business. In May of 2003, the parties signed an agreement. In contrast to a typical equipment lease transaction, Winthrop did not acquire goods and services for Sabert at Sabert's request. Rather, Sabert acquired, and paid for, those goods and services before obtaining financing from Winthrop. Indeed, Sabert had acquired 75% (by price) of those goods and services prior to the parties entering into the agreement, having acquired the necessary software and services in late

2002. Under their agreement, Sabert was to make 42 monthly payments to Winthrop. The payments due under the Lease Schedule covering more than 95% of the equipment (Lease Schedule 001) commenced on July 1, 2003. A later Lease Schedule (Lease Schedule 001R) was signed in November, 2003. It merely added an additional $13,000 in equipment to the almost $1,000,000 in equipment and services covered by Lease Schedule 001 and slightly adjusted the monthly payment amount to reflect the additional $13,000 loan. As of December, 2006, Sabert had made the 42 payments agreed to by the parties. Yet Winthrop now claims that the payment schedule was changed to a date six months later, which is contrary to the written documentation, was not intended by the parties, and would lead to an absurd contractual and economic result. Accordingly, Winthrop's lawsuit should be dismissed.

**PARTIES, JURISDICTION AND VENUE**

1. Unless admitted or otherwise qualified, Sabert denies each and every allegation contained in the Complaint.

2. Sabert, on information and belief, admits the allegations contained in paragraph 1 of the Complaint.

3. Sabert admits the allegations contained in paragraph 2 of the Complaint.

4. Sabert admits the allegations contained in paragraph 3 of the Complaint.

5. As to Sabert's alleged waiver of any objection to venue in this District, Sabert states that the applicable documents speak for themselves. Sabert denies the allegation in paragraph 4 of the Complaint because they state a conclusion of law. Sabert, on information and belief, admits that Winthrop is located in the District of Minnesota.

6. As to the allegations contained in the second sentence of paragraph 5 of the Complaint, Sabert states that the referenced contract speaks for itself. Sabert denies the

remaining allegation in Paragraph 5 of the Complaint because they state a conclusion of law. Sabert also states that it is without knowledge or information sufficient to form a belief as to the truth of the allegation that the parties are citizens of different states.

**FACTUAL ALLEGATIONS**

7. Sabert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Complaint.

8. Sabert is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Complaint.

9. With respect to the allegations contained in paragraph 8 of the Complaint, Sabert admits that in 2003 it entered into a contractual relationship with the Plaintiff. Sabert denies any inferences or allegations that it purchased "substantial computer equipment, software and related items selected by Sabert" after entering into a contractual relationship with the Plaintiff. Sabert admits further that it entered into an agreement with the Plaintiff and that the agreement speaks for itself.

10. With respect to the allegations contained in paragraph 9 of the Complaint, Sabert states that the paragraph makes a legal conclusion and does not contain factual allegations that must be admitted or denied. Sabert further states that the referenced exhibit speaks for itself.

11. With respect to the allegations contained in paragraph 10 of the Complaint, Sabert admits that it signed a document entitled "Lease Schedule Number 001R," which document speaks for itself. Sabert further states that the referenced exhibit speaks for itself. Sabert denies all other allegations or inferences contained in paragraph 10 of the Complaint and specifically states that the bulk of the equipment and software at issue in this lawsuit was purchased by Sabert prior to entering into an agreement with Plaintiff in May, 2003, and was referenced on a

document entitled Lease Schedule 001, which was executed by the parties in May of 2003, and initially attached to the parties' agreement.

12. Sabert denies the allegations contained in the first sentence of paragraph 11 of the Complaint and states that, on information and belief, only one certificate of acceptance was executed in connection with Lease Schedule 001R. Sabert states that additional certificates of acceptance relating to most of the equipment and software at issue in this lawsuit were executed in June of 2003, and that these certificates identify the installation dates for the equipment and software referenced therein. Sabert denies all other inferences or allegations contained in paragraph 11.

13. With respect to the allegations contained in paragraph 12 of the Complaint, Sabert states that the referenced documents speak for themselves. Sabert denies any remaining allegations contained in paragraph 12 of the Complaint, and Sabert denies any inference that Sabert's obligation to make 42 payments commenced after July 2003.

14. With respect to the allegations contained in paragraph 13 of the Complaint, Sabert states that the referenced document speaks for itself. Sabert denies any remaining allegations contained in paragraph 13 of the Complaint.

15. With respect to the allegations contained in paragraph 14 of the Complaint, Sabert states that the referenced document speaks for itself. Sabert denies any remaining allegations contained in paragraph 14.

16. Sabert denies the allegations contained in paragraph 15 of the Complaint.

17. The first sentence of paragraph 16 of the Complaint contains a legal conclusion concerning the extension of the Lease Schedule 001R, which requires neither admission nor denial. Sabert further alleges in response to the allegations contained in the first sentence of

paragraph 16 that, prior to December 3, 2006, it advised Winthrop that the final payment under the parties' agreement would be the payment due for December, 2006. With respect to the second sentence in paragraph 16 of the Complaint, Sabert states that the referenced document speaks for itself. Sabert denies that the term of Lease Schedule 001R extends to May 31, 2008. Sabert denies any remaining allegations in paragraph 16.

18. With respect to the allegations contained in paragraph 17 of the Complaint, Sabert states that the referenced document speaks for itself. Sabert denies any remaining allegations contained in paragraph 17.

19. With respect to the allegations contained in paragraph 18 of the Complaint, Sabert states that the referenced document speaks for itself. Sabert denies that it has defaulted on any agreement with Plaintiff. Sabert denies any remaining allegations contained in paragraph 18.

20. With respect to allegations contained in paragraph 19 of the Complaint, Sabert states that the referenced document speaks for itself. Sabert denies any remaining allegations contained in paragraph 19.

21. With respect to allegations contained in paragraph 20 of the Complaint, Sabert states that the referenced document speaks for itself. Sabert denies any remaining allegations contained in paragraph 20.

22. With respect to allegations contained in paragraph 21 of the Complaint, Sabert states that the referenced document speaks for itself. Sabert denies any remaining allegations contained in paragraph 21.

23. With respect to the allegations contained in paragraph 22 of the Complaint, Sabert denies that any charges were due on January 1, 2007. Sabert denies any remaining allegations contained in paragraph 22 of the Complaint.

24. Sabert denies the allegations contained in paragraph 23 of the Complaint.

**COUNT I**
**(BREACH OF LEASE)**

25. Sabert restates and realleges the responses contained in paragraphs 1-24 above as though fully set forth herein.

26. The allegations contained in paragraph 25 of the Complaint contain one or more characterizations or conclusions of law as to which no response is required. To the extent a response is required, Sabert denies the allegations contained in paragraph 25 of the Complaint.

27. Sabert denies the allegations contained in paragraph 26 of the Complaint.

28. With respect to the allegations contained in paragraph 27 of the Complaint, Sabert states that the referenced lease document speaks for itself. Sabert denies the remaining allegations contained in paragraph 27 of the Complaint and specifically denies any liability to Plaintiff.

29. Sabert denies the allegations contained in paragraph 28 of the Complaint.

**AFFIRMATIVE DEFENSES**

1. Plaintiff fails to state a claim upon which relief can be granted.

2. Plaintiff's claims are barred under the doctrines of unilateral and/or mutual mistake.

3. Plaintiff's claims may be barred due to damages/injuries caused by its own or others' acts, omissions or misrepresentations.

4. Plaintiff's claims may be barred in whole or in part due to its failure to mitigate damages.

5. Plaintiff's claims may be barred due to unconscionability.

6. Plaintiff's claims are barred on the grounds that its interpretation of the agreements with Sabert would lead to absurd results.

7. Plaintiff's claims may be barred due to waiver or estoppel.

8. Plaintiff's claims may be barred to the extent that it suffered no damages.

## COUNTERCLAIM
### Count I (Quantum Meruit/Unjust Enrichment)

1. Under their agreement, Winthrop Resources Corporation ("Winthrop") and the Defendants/Counterclaim Plaintiffs Sabert Corporation and Sabert Holding Corporation (collectively, "Sabert") agreed to a payment schedule of 42 months.

2. Winthrop claims that the parties' payment schedule commenced on December 1, 2003 to continue for 42 months thereafter (i.e., ending on May 31, 2007).

3. Nonetheless, under the terms of the parties' agreement, the 42-month payment schedule for over 95% of the equipment at issue commenced on July 1, 2003.

4. Consistent with the parties' agreement, Sabert made the 42 payments to Winthrop.

5. Prior to December 2003, Sabert made six lease payments to Winthrop, which payments totaled $126,366.

6. To the extent Winthrop claims it is entitled to 42 lease payments between December 1, 2003 and May 31, 2007, Sabert is entitled to be reimbursed for the payments it made between July and November of 2003, otherwise Winthrop would be unjustly enriched by at least $126,366.

7. As a result, to avoid Winthrop being unjustly enriched in this matter, Sabert is entitled to recover $126,366 for payments made between July and November of 2003.

**Count II (Breach of Contract)**

8. Sabert restates and realleges the allegations contained in paragraphs 1-7 of its Counterclaim as though fully set forth herein.

9. Under the parties' agreement, Sabert paid Winthrop security deposits totaling $25,576 ("Security Deposit").

10. Winthrop agreed that in the event Sabert did not default under the agreement, Winthrop would apply the Security Deposit to charges associated with Sabert's last payment under the payment schedule.

11. Sabert has not defaulted under the parties' agreement and it has made all 42 payments called for under the agreement.

12. Winthrop failed to apply the Security Deposit as it had promised to do.

13. As a result, Sabert has been damaged in the additional amount of $25,576.

**Count III (Quantum Meruit/Unjust Enrichment)**

14. Sabert restates and realleges the allegations contained in paragraphs 1-13 of its Counterclaim as though fully set forth herein.

15. In light of the foregoing, Winthrop would be unjustly enriched if it were allowed to keep the Security Deposit.

WHEREFORE, Sabert requests that this Court:

1. Dismiss Plaintiff's claims with prejudice;
2. Award Sabert $126,366 in connection with overpayments to Winthrop;
3. Award Sabert the return of its Security Deposit in the amount of $25,576; and
4. Award such other relief as the Court deems just and equitable.

DEFENDANTS DEMAND TRIAL BY JURY.

Dated: April 19, 2007

s/ Matthew T. Boos
James L. Baillie (# 3980)
Matthew T. Boos (# 237310)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Telephone: (612) 492-7180
Facsimile: (612) 492-7077
jbaillie@fredlaw.com
mboos@fredlaw.com

*Of Counsel*
Lawrence A. Goldman
David N. Crapo
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
Direct Dial: (973) 596-4523
Facsimile: (973) 639-6244
LGoldman@gibbonslaw.com
DCrapo@gibbonslaw.com

**Attorneys for Sabert Corporation and Sabert Holding Corporation**

4177686_3.DOC